## Kentucky River Timber & Coal Company v. Mosely.

(Decided March 28, 1919.)

### Appeal from Leslie Circuit Court.

1. Logs and Logging—Floating Tide—Expert Testimony.—In an action on a logging contract, the opinions of experienced log men who had a special knowledge of the subject and were present and observed the streams on the occasion in question and stated the facts on which their conclusions were based, that a particular tide was not a "floating tide" were admissible in evidence, the subject not being one of such common knowledge that the jury upon hearing the facts could have formed a reasonable opinion for themselves.

2. Logs and Logging—Floating Tide—Evidence—Estoppel.—Where under a logging contract plaintiff was given one more "floating tide" to float logs, the determination of the question was not left to the plaintiff, but the question whether a particular tide was a "floating tide" was one of fact, and plaintiff, who after making a diligent effort to float the logs on a particular tide found that the tide was not sufficient, was not precluded by his conduct,

which in no wise prejudiced the rights of the defendant, from asserting that the tide was not sufficient.

CLEON K. CALVERT for appellant.

LEWIS & LEWIS, JAMES H. JEFFRIES and B. B. GOLDEN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, E. L. Mosely, brought this suit against the Kentucky River Timber & Coal Company to recover the sum of $950.00, alleged to be due for services rendered in floating and delivering to defendant certain saw logs. From a verdict and judgment in his favor for $919.40 the defendant appeals.

In the month of August, 1916, defendant had 12,132 logs in Beech Fork and in that part of Middle Fork of the Kentucky river, lying between the mouth of Beech Fork and the mouth of Greasy Fork. These logs plaintiff agreed to deliver to defendant at the mouth of Greasy Fork. By the terms of the contract, he was to receive 12c. for each log delivered, but was to pay defendant as liquidated damages 50c. for each log not delivered by the first day of July, 1917. Under this contract, plaintiff delivered 6,761 logs and there remained undelivered on July, 1917, 5,371 logs. Because of the non-delivery of the latter logs, plaintiff became indebted to the defendant in the sum of $2,685.50. Thereupon plaintiff and defendant adjusted their differences by executing another contract, by the terms of which plaintiff was to have one "floating tide" by which to deliver the undelivered logs. If he delivered a sufficient number of the undelivered logs when added to those already delivered to exceed, at 12c. per log, the amount of his indebtedness, then defendant was to pay him such excess. On the other hand, if the number so delivered when added to those already delivered did not exceed his indebtedness, then defendant was to cancel the indebtedness. On December 27, 1916, following, the streams rose and plaintiff succeeded in floating and delivering 2,138 of the logs in question. Another tide occurred on January 4, 1917, when plaintiff floated and delivered practically all of the remainder of the logs.

It is conceded that the liability of the defendant turns on whether the tide of December 27, 1916, was the first

"floating tide" that occurred after the execution of the contract, and this was the only issue submitted to the jury.

According to the evidence for plaintiff, the waters of Beech Fork and Middle Fork, where the logs were situated, rose on the morning of December 27th, but soon subsided. Plaintiff, with the aid of a large number of employes, floated and delivered more than 200 of the logs in question. The tide at that time did not exceed two and one-half feet in height, whereas it was necessary to have a rise of at least four feet.

The logs delivered by plaintiff were only small logs, and he was able to deliver them only after great effort on the part of his men in rolling and pushing them over the rock bars and through the shoals and shallow places of the stream. Plaintiff and several other witnesses, who were present and observed the streams and who were practical log men, gave it as their opinion that the tide in question was not a "floating tide."

It is first contended that the court erred in permitting the witnesses to give their opinions as to the character of the tide, it being argued that their statements that the tide was not a "floating tide," were mere conclusions, and therefore inadmissible. It appears not only that the witnesses were experienced log men, having a special knowledge of the subject, but were present and observed the streams on the day in question, and that some of them actually assisted plaintiff in the work of floating the logs. The facts on which their conclusions were based were within their personal knowledge, and were stated to the jury.

In our opinion, the subject was not one of such common knowledge that the jury, upon hearing the facts, could have formed a reasonable opinion for themselves. Hence, we conclude that it falls within the broad field of opinion evidence, and since the witnesses qualified as experts and stated the facts on which their opinions were based, their opinions were properly received in evidence.

It is further insisted that as plaintiff employed hands and attempted to float the logs on December 27th, and did succeed in floating a large number of them, and thereby construed and treated the tide that day as a "floating tide," he was bound by his conduct and could not thereafter be heard to say that it was not a "floating tide."

This reasoning we are unable to approve. The contract provided that plaintiff should have one more "floating tide," and the parties clearly contemplated that a "floating tide" was one sufficient to enable plaintiff, by the exercise of reasonable diligence, to float the logs to their destination.

The determination of the question was not left to plaintiff. Whether the particular tide was a "floating tide" was a question of fact depending on the condition of the streams and not on plaintiff's judgment or conduct in the matter. Plaintiff's failure to float the logs was not due to any lack of diligent effort, but was due to the insufficiency of the tide. His action in no wise prejudiced the rights of the defendant. When the tide proved insufficient, he was not required to go on with the work, and his mere mistake of judgment in supposing that the tide was sufficient and in making a *bona fide* attempt to float the logs did not preclude him from asserting that the tide was not sufficient.

Judgment affirmed.